**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**JAMIE S. DUDLEY,**

                              **Plaintiff,**

    vs.                                               **9:12-cv-00429
                                                             (MAD/RFT)**

**CITY OF GLENS FALLS; POLICE OFFICER
WILLIAM F. HOLMES,**

                              **Defendants.**

_____

**APPEARANCES:**                                  **OF COUNSEL:**

**JAMIE S. DUDLEY**
11-A-5490
Franklin Correctional Facility
P.O. Box 10
Malone, New York 12953
Plaintiff *pro se*

**CARTER, CONBOY LAW FIRM**         **JAMES A. RESILA, ESQ.**
20 Corporate Woods Boulevard
Albany, New York 12211
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his Fourth Amendment right to be free from excessive force by tasing him while he was being processed at the Glens Falls Police Station. *See* Dkt. No. 2. On November 13, 2012, Defendants moved for summary judgment. *See* Dkt. No. 15. In a September 6, 2013 Report-Recommendation and Order, Magistrate Judge Treece recommended that the Court (1) grant the motion as to Plaintiff's municipal liability claim against Defendant City of Glens Falls; (2) deny

the motion as to Plaintiff's excessive force claim against Defendant Holmes; and (3) deny the motion as to Defendant Holmes' qualified immunity defense. *See* Dkt. No. 46 at 12. On September 19, 2013, Defendants objected to the Report-Recommendation and Order insofar as it recommended denying the motion as to Defendant Holmes. *See* Dkt. No. 47.

Currently before the Court is Defendants' motion for summary judgment.

## II. BACKGROUND

On May 8, 2011, the Glens Falls Police pulled over and arrested Plaintiff on a felony charge of Driving While Intoxicated ("DWI"), after he refused to take a breathalyser test. *See* Dkt. No. 15-8; Dkt. No. 2 at 4.[1] Plaintiff was taken to the Glens Falls' Police Station where he was processed by Defendant Holmes. *See* Dkt. No. 15-1 at ¶ 3. A video, submitted by Defendants, depicts some of the events which occurred at the station on May 8, 2011. *See* Dkt. No. 15-2 (the "Video" has been traditionally filed with the Court).

During the relevant portion of the video, Plaintiff is handcuffed and seated in a chair with his foot shackled to the wall. *See id.* Although the video contains no audio, the video appears to show Plaintiff conversing with Defendant Holmes. *See id.* At one point during the video, Plaintiff kicks a chair next to the one in which he is seated into an adjacent desk, stands up, grabs the same chair and lifts it off the ground. *See id.* Plaintiff then lets go of the chair and begins to sit back down in his own chair. *See id.* Before he is completely seated, however, Defendant Holmes shoots Plaintiff with a taser, causing him to fall to the floor. *See id.* Plaintiff is thereafter subdued by Defendant Holmes and other officers. *See id.*

---

[1] To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

As a result of this incident, Plaintiff later pled guilty to menacing in the second degree. *See* Dkt. No. 24 at 2; Dkt. No. 15-9.

In an August 6, 2013 Report-Recommendation and Order, Magistrate Judge Treece recommended that the Court grant in part and denied in part Defendants' motion for summary judgment. *See* Dkt. No. 46. Specifically, Magistrate Judge Treece found that Plaintiff is not precluded from bringing his excessive force claim because of the doctrine of issue preclusion. *See id.* at 4-5. The recommendation noted that, although Plaintiff pled guilty to menacing in the second degree, Defendants failed to offer any relevant court documents to establish that the plea court even contemplated the issue of whether the amount of force used by Defendant Holmes was reasonable under the circumstances. *See id.* at 5. Further, the recommendation noted that it does not "appear that a determination as to whether the amount of force used by Defendant Holmes was reasonable under the circumstances is an element of menacing in the second degree." *See id.* Magistrate Judge Treece did find, however, that because Plaintiff pled guilty to menacing in the second degree as a result of the May 8, 2011 events, Plaintiff is precluded from arguing that he did not place or attempt to place Defendant Holmes in reasonable fear of physical injury prior to being tased. *See id.* at 6 (citation omitted).

Next, distinguishing the case relied upon by Defendants, Magistrate Judge Treece found that there is an issue of fact as to whether the amount of force used by Defendant Holmes was reasonable. *See id.* at 7 (citing *Hardy v. Plante*, 2009 WL 249787, *2 & *6 (N.D.N.Y. Feb. 3, 2009)). Regarding the video, the recommendation noted that the video does not necessarily support Defendants' claim because, among other things, it lacks audio, it is unclear where Defendant Holmes was standing prior to deploying the taser or whether Defendant Holmes was actually in danger of being struck with the chair. *See id.* at 8. Further, the recommendation noted

3

that there "appears to be an appreciable delay between the time Plaintiff put down the chair and the time he was tased. Indeed, Plaintiff had already put the chair down and was attempting to sit back down in his chair when he was tased." *See id.* Similarly, Magistrate Judge Treece recommended denying the motion on summary judgment grounds because a genuine issue of material fact exists as to what the precise circumstances surrounding Defendant Holmes' use of the taser, thereby making such a finding premature. *See id.* at 9.

Finally, Magistrate Judge Treece recommended granting Defendants' motion as to Plaintiff's municipal liability claim against Defendant City of Glens Falls. *See id.* at 10-11.

In his objections to Magistrate Judge Treece's Report-Recommendation and Order, Defendant Holmes argues that it was error to find that Plaintiff is not precluded from raising his excessive force claim. *See* Dkt. No. 47 at 2. Defendant Holmes asserts that "the video . . . clearly establishes the conduct fo the plaintiff which led to the menacing charge to which plaintiff pled guilty." *See id.* Further, Defendant Holmes claims that Magistrate Judge Treece failed to take into account that the menacing conduct led to the use of the taser, not the underlying reason for which Plaintiff was already in police custody (the DWI). *See id.* Next, Defendant Holmes again relies on *Hardy v. Plante* to support his claim, even though issue preclusion may not apply, he is still entitled to a ruling that, as a matter of law, he did not use excessive force in light of Plaintiff's actions. *See id.*

Next, Defendant Holmes "takes issue with the use of the term 'immediately' relative to the decision to deploy the taser after plaintiff picked up the chair." *See id.* at 3. Defendant Holmes contends that there was not an "'appreciable delay'" between the time Plaintiff put down the chair and the time he was tased, and requests that the Court review the video. *See id.* at 3-4. Finally, Defendant Holmes argues that Magistrate Judge Treece erred in determining that an issue of fact

precludes granting the motion on qualified immunity grounds. *See id.* at 5. Defendant Holmes claims that it is not premature for the Court to determine whether reasonable law officers could disagree about the reasonableness of the force used in the present matter. *See id.* at 6.

## III. DISCUSSION

**A.  Standard of review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendation made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c). (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2502, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). "However, this does not mean that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *See id.* at 295 (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, \*1 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence" is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Cary v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

6

**B.     Excessive force**

Claims that a law enforcement officer used excessive force in the course of making an arrest are "analyzed under the Fourth Amendment's 'objective reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Scott v. Harris*, 550 U.S. 372, 381 (holding that "a claim of 'excessive force in the course of making [a] . . . "seizure" of [the] person . . . [is] properly analyzed under the Fourth Amendment's "objective reasonableness" standard'" (quotation omitted)); *Terranova v. New York*, 676 F.3d 305, 308 (2d Cir. 2012) (quotations and other citation omitted).  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Graham*, 490 U.S. at 396 (quotations and other citation omitted); *see also Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).  "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  *Graham*, 490 U.S. at 396.  Proper application of the Fourth Amendment's "objective reasonableness" standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396; *see also Terranova*, 676 F.3d at 308; *Tracy*, 623 F.3d at 96.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396; *see also Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (citation omitted).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, . . .

7

violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quotations and other citation omitted); *see also Tracy*, 623 F.3d at 96. However, allegations that an "officer twisted [the plaintiff's] arm, 'yanked' her, and threw her up against a car, causing only bruising" have been held to be sufficient to survive summary judgment. *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (citing *Robison v. Via*, 821 F.2d 913, 924–25 (2d Cir. 1987)). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97; *see also Tracy*, 623 F.3d at 96; *Jones*, 465 F.3d at 61 (citation omitted). "As in other Fourth Amendment contexts, . . . the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397; *see also Jones*, 465 F.3d at 61. "Given the fact-specific nature of the [objective reasonableness] inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable fact-finder could conclude that the officers' conduct was objectively unreasonable." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (citation omitted).

**C.    Qualified immunity**

"The doctrine of qualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d

8

396 (1982)).

> For a constitutional right to be "clearly established" for purposes of determining whether an officer is entitled to qualified immunity, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that *in the light of pre-existing law the unlawfulness must be apparent*."

*Mollica v. Volker*, 229 F.3d 366, 370-71 (2d Cir. 2000) (quoting *Anderson v. Creiehton*, 483 U.S. 635, 640 (1987)) (emphasis in original). "Where the right at issue in the circumstances confronting [the] officers . . . was clearly established but was violated, the officers will nonetheless be entitled to qualified immunity 'if . . . it was objectively reasonable for them to believe their acts did not violate those rights.'" *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quotation and other citation omitted).

"Although a mere mistake in the performance of an official duty may not deprive the officer of qualified immunity, the doctrine does not shield performance that either (a) was in violation of clearly established law, or (b) was plainly incompetent." *Manganiello v. City of New York*, 612, F.3d 149, 165 (2d Cir. 2010) (citations omitted). "With respect to both the legal question and the matter of competence, the officials' actions must be evaluated for objective reasonableness. . . . That is, '[e]ven if the right at issue was clearly established in certain respects . . . an officer is still entitled to qualified immunity if "officers of reasonable competence could disagree" on the legality of the action at issue in its particular factual context.'" *Id.* (quotations omitted).

The determination of whether an official's conduct was objectively reasonable is a mixed question of law and fact. *See Zellner*, 494 F.3d at 367 (citing *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)) (other citations omitted). "The ultimate question of whether it was

9

objectively reasonable for the officer to believe that his conduct did not violate a clearly established right, *i.e.*, whether officers of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court. However, '[a] contention that . . . it was objectively reasonable for the official to believe that his acts did not violate those rights has "its principle focus on the particular facts of the case."'" *Id.* (quotation and other citations omitted).

If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court. *See id.* at 368 (citation omitted). Any unresolved factual issues, however, must be resolved by the jury. *See id.* (quoting *Kerman*, 374 F.3d at 109) (other citations omitted). Once the court has received the jury's decision as to "what the facts were that the officer faced or perceived," the court must then "make the ultimate legal determination of whether qualified immunity attaches on those facts." *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (quotation omitted); *see also Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) (quotation omitted).

**D.   Application**

Contrary to Defendant Holmes' contentions, Magistrate Judge Treece correctly recommended that the Court should deny Defendants' motion for summary judgment as to the excessive force against Defendant Holmes. In *Hardy v. Plante*, the case relied upon by Defendant Holmes, the court found that the arresting officers' use of a taser was objectively reasonable as a matter of law because the arresting officers had reason to believe that the plaintiff had a knife, the plaintiff "physically pushed" an officer, and continued to physically struggle with the arresting officers after he was tackled and wrestled to the ground. *See Hardy*, 2009 WL 249787, at *2, *6.

As Magistrate Judge Treece correctly concluded, in the present case, there was no

physical contact between Defendant Holmes and Plaintiff.  Further, Plaintiff was handcuffed and shackled by the leg to the wall and Plaintiff did not struggle with Defendant Holmes.  Further, although Plaintiff did kick a chair and then raise it over his head in a threatening manner and appeared to be prepared to throw it at Defendant Holmes, there was no indication that Plaintiff was in possession of a deadly weapon.

Further, contrary to Defendant Holmes' contention, Magistrate Judge Treece accurately described the events that transpired in the video.  Upon review of the video, there does appear "to be an appreciable delay between the time Plaintiff put down the chair and the time he was tased.  Indeed, Plaintiff had already put the chair down and was attempting to sit back down in his chair when he was tased." As such, a rational juror viewing the video could reasonably conclude that, at the time he was tased, Plaintiff no longer posed a significant risk of harm to Defendant Holmes.  Therefore, the reasonableness of Defendant Holmes' decision to use the taser is a question of fact that must be resolved at trial.  *See Scott*, 344 F.3d at 289.

Finally, Magistrate Judge Treece also correctly concluded that questions of fact preclude the Court from granting the motion on qualified immunity grounds.  Questions about the precise circumstances surrounding the use of force will need to be answered by the jury before the Court is able to determine as a matter of law whether Defendant Holmes is entitled to qualified immunity.

## IV. CONCLUSION

After carefully considering Magistrate Judge Treece's Report-Recommendation and Order, Defendant Holmes' objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Treece's September 6, 2013 Report-Recommendation and Order is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED in part** and **DENIED in part**;[2] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 23, 2013
        Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

[2] As a result of this Memorandum-Decision and Order, Plaintiff's excessive force claim against Defendant Holmes is the only claim remaining.